NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-820

ADOPTION OF MORGAN (and two companion cases[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a trial, a Juvenile Court judge found that the mother was unfit to parent Morgan, Braden, and Ava (collectively, the three children), and that each of their best interests would be served by the termination of her parental rights, but ordered visits between the mother and the three children to be conducted posttermination at least every other month and postadoption twice per year. On appeal from the decrees, the mother does not contest the judge's finding of unfitness, but argues that her due process rights were violated when, after she failed to appear for trial, the judge declined to grant a continuance.

_____

[1] Adoption of Braden and Adoption of Ava. The children's names are pseudonyms. At the time of trial, two older siblings were still subjects of the care and protection petition; they subsequently turned eighteen, aged out of the statutory system, and are not parties to this appeal. See G. L. c. 119, § 26.

The mother further argues that because the judge found a sufficient bond between the three children and the mother to order posttermination and postadoption visits, the outcome of the trial might have been different had she been present. We affirm.[2]

Background. The mother has nine biological children, of whom the three children, Morgan, Braden, and Ava, are the youngest. Dating back to 2000, there have been hundreds of reports alleging abuse or neglect of the three children or their older siblings filed pursuant to G. L. c. 119, § 51A (51A reports), many of which were supported.

On January 13, 2021, a 51A report was filed alleging neglect of one of the three children's older siblings. Two days later, the Department of Children and Families (DCF) initiated this care and protection proceeding as to the three children and older siblings who are no longer involved in this proceeding. DCF was granted temporary custody of the three children, then ages eleven, five, and two. Morgan and Braden were initially placed with a paternal aunt, and Ava was placed with a foster mother. After their removal, three more 51A reports were filed alleging neglect and abuse of the three children and sexual

_____

[2] The judge also terminated the father's parental rights to the three children; he has not appealed.

2

abuse of Braden, based on what was learned about what had happened to them while in the parents' custody. After an investigation, the allegations of neglect and physical abuse of the children were supported, as were the allegations of sexual abuse of Braden by an unknown perpetrator.

When the three children were removed from their parents' care, Morgan had not seen a doctor in four years, and Braden and Ava had not seen one in about fifteen months. Morgan has diagnoses including severe asthma, adjustment disorder with mixed anxiety and depressed mood, chronic posttraumatic stress disorder (PTSD), and attention deficit hyperactivity disorder (ADHD). Braden has been diagnosed with adjustment disorder with mixed anxiety and depressed mood, PTSD, and ADHD.

In September 2021, DCF changed its goal for the three children to adoption. Morgan was removed from the paternal aunt's home in December 2021, and has since been in several residential placements and engaged in multiple therapeutic interventions. Braden was removed from the paternal aunt's home in October 2023, and has since been in several residential facilities. After two different placements with paternal relatives, Ava was returned to the foster home where she had been placed in early 2021, and that foster mother has since become her preadoptive mother.

3

The docket reflects that the mother failed to appear for many pretrial hearings and scheduled trial dates. On one such trial date, May 1, 2023, which had been scheduled to start late to accommodate the mother's methadone treatment, the mother did not appear. Trial began and continued in her absence for six nonconsecutive days. On the seventh day, June 5, 2023, the mother appeared and requested that her counsel withdraw, then requested appointment of new counsel. The judge attempted to find counsel for the mother, but was unsuccessful. On the eighth trial day, the mother again did not appear, and the father's attorney reported that the mother was in the hospital. The judge declared a mistrial and appointed new counsel for the mother.

Beginning on November 25, 2024, the case was tried before a different judge. On the first day of trial, the mother was not present and her counsel orally moved for a continuance, stating, as discussed below, that the mother was in a residential substance abuse treatment program. The judge denied the continuance and trial proceeded in the mother's absence. The next day, the mother was again absent and her counsel informed the judge that she had instructed him to move to withdraw as counsel and for another continuance. The judge denied both motions.

4

Based on the evidence at trial, the judge made detailed findings as to the mother's unfitness to parent the three children, based on issues including her history of mental health disorders, substance use, and domestic abuse involving the father in the presence of at least one of the older siblings. The judge also found that the mother had abused and neglected the three children and their older siblings, including by making Morgan and two older siblings watch a video recording of Braden's being sexually abused. The mother failed to accomplish tasks set forth in DCF's action plan, including attending home visits, signing releases, submitting to drug screens, and undergoing psychological testing. On many occasions, the mother failed to attend scheduled visits with the three children.

Discussion. The mother argues that her due process rights were violated when the judge proceeded with trial in her absence and denied her requests for a continuance, and the fact that the judge granted posttermination and postadoption visitation shows that "the outcome of the case might have been different" if the mother had been present at trial.[3] We are unpersuaded.

_____

[3] On appeal, the mother does not argue that the trial judge erred in denying her counsel's motion to withdraw. We do not reach that issue, but, if we did, we would find no abuse of discretion. See Adoption of Valentina, 97 Mass. App. Ct. 130, 134 (2020). In denying the motion for counsel to withdraw, the judge noted that counsel was about to begin cross-examination of

5

"The decision on whether to continue any judicial proceeding is a matter entrusted to the sound discretion of the judge, and the judge's decision will be upheld absent an abuse of that discretion." Adoption of Gillian, 63 Mass. App. Ct. 398, 409-410 (2005). We reverse the decision to deny a continuance only where we find that "the judge made a clear error of judgment in weighing the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives." Vazquez Diaz v. Commonwealth, 487 Mass. 336, 345 (2021), quoting L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014). In addition, "[s]peedy resolution of cases involving issues of custody or adoption is desirable," Care & Protection of Rashida, 488 Mass. 217, 232 (2021), quoting Adoption of Emily, 25 Mass. App. Ct. 579, 581 (1988), and a judge may consider "[o]ther interests, specifically the paramount interests of the children involved," in determining whether a requested continuance should be allowed, Care & Protection of Quinn, 54 Mass. App. Ct. 117, 122 (2002).

By the time the mother requested the continuance on November 25, 2024, the case had been pending for almost four years. The mother points to the statements of her counsel

the adoption social worker and "it would be a greater disservice to Mother to allow her to proceed pro se."

6

informing the judge that the mother was "in a residential substance abuse treatment program, and I've spoken with her and the admissions counselor at the program. She's been at [the program] . . . since November 5th." The mother, however, has never supported that claim with any affidavit or treatment records, even though the case would not be decided for at least two more weeks while the judge waited for further motions in limine. No showing was made that either that residential program or the purported hospitalization in May 2023 was involuntary or medically necessary, rather than a last-ditch attempt to delay the trial. The judge found that "Mother and Father engaged in dishonest, dilatory conduct to delay the trial for years and induce the first mistrial. Parents were absent without excuse from most court hearings, and Parents did not attend a single moment of the present 2024 trial."[4] In light of the mother's unbroken record of missing scheduled first days of trial seven times, four times without any excuse, we discern no

---

[4] The judge drew an adverse inference from the mother's failure to attend the trial. The mother did not argue in her appellate brief that the judge was not permitted to do so, though her counsel raised the issue for the first time at oral argument. In those circumstances, we "need not pass upon" the issue. Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019). If we did consider it, we would find no abuse of discretion. See Adoption of Helga, 97 Mass. App. Ct. 521, 526-527 (2020).

abuse of the judge's discretion in denying the mother's motion for another continuance on November 25, 2024, and a second motion on the following day.  Contrast Adoption of Patty, 489 Mass. 630, 631-633, 645-647 (2022) (parent's due process rights violated where absence from videoconference trial attributable to inadequate explanation of video technology, failure to assist parent with  access to technology used by others, and technological problems); Adoption of Whitney, 53 Mass. App. Ct. 832, 838-839 (2002) (incarcerated father's due process rights violated where he was not permitted to participate in trial despite his imminent release from prison).

Nor do we find any merit to the mother's argument that the outcome of the case might have been different had she been present at trial.  The mother has not set forth any information that she would have provided, had she participated in the trial, that could have rebutted either the evidence of her unfitness or the evidence that termination of her parental rights served the three children's best interests.  Contrast Adoption of Whitney, 53 Mass. App. Ct. at 837 & n.4 (father recently released from incarceration supported motion for new trial with affidavit seeking to rebut judge's adverse findings with his own testimony and other evidence); Adoption of Edmund, 50 Mass. App. Ct. 526, 529-531 (2000) (remanding to permit incarcerated father

precluded from telephone participation at trial to submit affidavit responding to DCF's evidence).  We note that the judge's "'specific and detailed' findings," which the mother does not challenge as erroneous, "demonstrate [the mother's] parental unfitness clearly and convincingly."  Adoption of Jacob, 99 Mass. App. Ct. 258, 262 (2021), quoting Custody of Eleanor, 414 Mass. 795, 799 (1993).  Finally, we note that the judge's conclusion that termination of the mother's parental rights served the three children's best interests was supported by clear and convincing evidence. See Adoption of Luc, 484 Mass. 139, 144 (2020).

Conclusion.  Accordingly, the decrees terminating the mother's parental rights to the three children are affirmed.

So ordered.

By the Court (Ditkoff, Hand & Grant, JJ.[5]),

Clerk

Entered:  July 22, 2026.

---

[5] The panelists are listed in order of seniority.